IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| COMMUNITY OF CHRIST COPYRIGHT CORPORATION et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 4:08-CV-00906-GAF |
| DEVON PARK RESTORATION BRANCH OF JESUS CHRIST'S CHURCH et al., | ) ) ) ) | |
| Defendants. | ) | |

### ORDER GRANTING PRELIMINARY INJUNCTION

On April 15th and 16th of 2009, the Court held a hearing on Plaintiffs' Motion for Preliminary Injunction (the "Motion") (Docket No. 8). Plaintiffs appeared by and through their counsel, J. David Wharton, Mark M. Iba, and Elizabeth A. Tassi of Stinson Morrison Hecker LLP. Defendants appeared by and through their counsel, Ron L. Holt and Julie J. Gibson of Brown & Dunn, P.C. Having considered the evidence presented and arguments submitted at the hearing and in Plaintiffs' Motion and Suggestions in Support (Docket No. 9), Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction (Docket No. 33), and the Reply Suggestions in Support of Plaintiffs' Motion for Preliminary Injunction (Docket No. 42), the Court hereby rules as follows:

### Findings of Fact and Conclusions of Law

Plaintiff Community of Christ Copyright Corporation owns all right, title, and interest in and to federal Collective Membership Mark Registration No. 956,687 for RLDS, federal Service Mark Registration No. 3,188,759 for REORGANIZED CHURCH OF JESUS CHRIST OF

LATTER DAY SAINTS, federal Service Mark Registration No. 3,173,265 for REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1), federal Service Mark Registration No. 1,044,453 for PEACE (and design), and all corresponding common law rights in the marks.  Plaintiff Community of Christ owns all right, title, and interest in the unregistered mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 2).  The design marks are displayed below:

  

Reg. No. 1,044,453    Reg. No. 3,173,265    Unregistered Mark

In August of 2006, Plaintiffs heard that Defendants were using the name Reorganized Church of Jesus Christ of Latter Day Saints on their sign.  In November of 2007, Plaintiffs were shown a photograph of Defendants' sign during the discovery phase of a related litigation.  On October 16, 2008, Plaintiffs received a letter from Defendants stating that Defendants were using and intended to continue using Plaintiffs' marks on signage, literature, church bulletins, and advertisements.  Defendants' current sign, erected outside of their church building, reads substantially as follows:

2



Plaintiffs sent a letter to Defendants requesting that they cease and desist from using Plaintiffs' marks. Defendants did not respond to Plaintiffs' letter because Defendants had no intention to stop using the marks. As a result, Plaintiffs filed suit against Defendants for, among other things, trademark violations under 15 U.S.C. § 1114 and 15 U.S.C. § 1125. Subsequently, Plaintiffs discovered that Defendants have also used Plaintiffs' marks on a bronze seal mounted in their church sanctuary, on a flag hanging in their church sanctuary, in various business meeting minutes, newsletters, and social event flyers, on their website, in periodic ads placed with the Independence Examiner, and on baptismal, priesthood, and baby blessing certificates. Defendants did not ask for or obtain authorization from Plaintiffs to use the names, seals, or marks in any manner.

Plaintiffs have met the legal standards for the imposition of a preliminary injunction. They have shown (1) a likelihood that they will succeed on the merits; (2) a threat of irreparable

3

Case 4:08-cv-00906-GAF   Document 77   Filed 04/23/09   Page 3 of 10

harm; (3) that the balance of equities heavily favors Plaintiffs; and (4) that the public interest will be advanced by granting the preliminary relief requested.

   1.   Probability of Success on the Merits.

Plaintiffs have demonstrated that they are likely to succeed on the merits of their trademark infringement claims. First, Plaintiffs' federally registered marks are presumed valid. *See* 15 U.S.C. § 1115(a). Defendants dispute Plaintiffs' rights in the marks-in-suit on the basis of abandonment. Abandonment requires Defendants to prove by clear and convincing evidence that Plaintiffs have discontinued the use of their marks with an intent not to resume use or have otherwise caused the their marks to lose their significance as an indication of origin. *See* 15 U.S.C. § 1127; 3 J. McCarthy, *Trademarks and Unfair Competition* § 17:12 at 17-22 (4th ed. 2008).

Defendants have not shown that they are likely to meet this test. Among other things, Plaintiffs continue to use the marks-in-suit on the exterior and interior of the buildings of many of their authorized congregations, in publications, to hold title to real estate, in the receipt of gifts and bequests, and as identifiers by Plaintiff Community of Christ's members, both as a matter of outward display and as a matter of personal expression of faith. Such use is bona fide trademark use and not mere warehousing of the marks as argued by Defendants. Defendants cite *IntraWest Fin. Corp. v. Western Nat'l Bank of Denver*, 610 F. Supp. 950 (D. Colo. 1985) to support their position; but this case differs from *IntraWest* in that Plaintiffs continued to use the marks-in-suit as service source and membership identifiers and apprized the public of their intent to continue to use their marks despite adopting an additional denominational name. Plaintiffs' continued use of the marks-in-suit as trademarks, service marks, and collective membership marks forecloses a finding of abandonment.

4

Defendants also cannot show that Plaintiffs have unintentionally abandoned their marks through an uncontrolled licensing agreement. "The generally accepted meaning of 'uncontrolled licensing' is where a trademark owner has licensed someone else to make or manufacture its products and then fails to control the quality of the products made by the licensee, thus permitting a deception of the public." *Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477, 485 (8th Cir. 1967). Plaintiff Community of Christ Copyright Corporation has established that it is capable of exercising and in fact does exercise reasonable control over the services offered under the marks-in-suit through its officers, who duly serve as leaders in its exclusive licensee's hierarchical church body. Plaintiffs' marks have not been intentionally or unintentionally abandoned.

Plaintiffs have also established a likelihood of confusion. Defendants are not using merely similar marks. They are displaying Plaintiffs' exact marks in their sanctuary and on their sign, website, and other materials mentioned above. By placing their sign in Independence, Missouri, Defendants have used Plaintiffs' marks geographically near Plaintiffs' world headquarters and various congregations of Plaintiffs in and around the Independence area. Further, Defendants are using Plaintiffs' marks for religious services, the exact services Plaintiffs offer under their marks. Because the marks are identical, used in the same geographic location and used for identical services, Plaintiffs are entitled to a presumption that there is a likelihood of confusion and Defendants have not shown that they can rebut it. *See Solutech, Inc. v. Solutech Consulting Servs., Inc.*, 153 F. Supp. 2d 1082, 1088 (E.D. Mo. 2000).

Bolstering the presumption is the fact that the marks are strong, and thus, entitled to greater protection. The RLDS and PEACE (and design) marks have become incontestable under 15 U.S.C. § 1065 by virtue of being in continuous use by Plaintiffs for over five years post-registration. The mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY

SAINTS has been in continuous use in the Midwest (and throughout the world) for more than 100 years and the REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design versions 1 and 2) seals have been used in slightly variant forms since 1965.  Further, in light of the fact that Plaintiffs use both the names Reorganized Church of Jesus Christ of Latter Day Saints (or RLDS Church) and Community of Christ, there is a greater likelihood of confusion if a church, such as the Devon Park Restoration Branch of Jesus Christ's Church that is not affiliated with Community of Christ, uses the marks belonging to Plaintiffs.

Defendants' arguments that Plaintiffs' REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS and REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1) marks are descriptive, and thus not entitled to protection, lack merit.  These two marks have become distinctive of Plaintiffs' services.  Plaintiffs have used these marks to distinguish their services as a denomination of Christianity for at least the last 40 years such that there are approximately 250,000 Community of Christ members in 50 nations that would instantly identify Plaintiffs as the source of services offered under them.  Defendants have not presented evidence that these marks are anything other than distinctive marks entitled to the protection of the federal statute under the provisions of 15 U.S.C. § 1052(f).

Defendants also have not established a fair use defense.  The defendant church's name is Devon Park Restoration Branch of Jesus Christ's Church, and it was previously known as Southeast Independence Branch.  Plaintiffs' marks are not part of the Defendants' names.  Furthermore, Defendants' use of the marks on their sign, website, and other materials is not merely descriptive of faith and beliefs; these instances of use are invitations to the public to join in worship at the defendant church.  This use does not qualify as fair use.

Finally, Defendants have not shown acquiescence. Defendants neither asked Plaintiffs for permission nor did Plaintiffs grant any express or implied consent to use the marks. Plaintiffs acted promptly in filing this action after receiving the October 2008 letter from Defendants claiming entitlement to use Plaintiffs' marks and confirming the several ways that they were using and planning on continuing to use Plaintiffs' marks. Furthermore, Defendants have shown no prejudice as a result of any alleged delay by Plaintiffs in asserting their rights.

### 2. Irreparable Harm

A showing of probable success on the merits raises a presumption of irreparable injury. *See General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987). The law recognizes that "[i]n trademark infringement, it is not necessary for plaintiff to prove actual damage or injury to obtain injunctive relief. Injury is presumed once a likelihood of confusion has been established. All that the complaining party must do to establish its right to an injunction is to prove the likelihood of confusion." *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 403 n.11 (8th Cir. 1987) (quotations omitted). S*ee also* Lanham Act, 15 U.S.C. § 1116(a) (expressly authorizing injunctive relief for trademark violations). As described above, Plaintiffs are likely to succeed in showing a likelihood of confusion and thus, are irreparably harmed by Defendants' use of their marks.

### 3. The Balance of Equities

The balance of equities weighs heavily in favor of a preliminary injunction. The injunction requested by Plaintiffs is not a disfavored injunction because it does not disturb the status quo and does not afford Plaintiffs substantially all the relief they would be entitled to after a full trial on the merits. In trademark cases, the status quo "refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)

7

(quotations omitted). The status quo in this case is the period before Defendants began using the infringing marks.

Importantly, granting Plaintiffs' requested injunction will not interfere with Defendants' worship services or religious beliefs or practices. Other Restoration Branches operate without using Plaintiffs' marks, and Defendants offer no reason why they cannot do the same. Defendants have a non-infringing name they can use in the interim to identify their services and membership: their current official name of incorporation, "Devon Park Restoration Branch of Jesus Christ's Church." Plaintiffs are entitled to the exclusive use of their marks, and an injunction that preserves Plaintiffs' rights, without disturbing the status quo or granting costly or permanent relief, is heavily favored.

4. The Public Interest

An injunction serves the public interest here. The public has an interest in the enforcement of valid trademarks. The public also has the right not to be deceived or confused as a result of the infringement of established marks. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).

**Conclusion**

For the foregoing reasons, the Court finds that Plaintiffs have established each element necessary for the issuance of a preliminary injunction under Fed. R. Civ. P. 65. The Court hereby **GRANTS** Plaintiffs' Motion for Preliminary Injunction. Accordingly, it is hereby **ORDERED** that Defendants, including their agents, affiliates, employees, and all others acting in concert or participation with them are **ENJOINED AND RESTRAINED** during the pendency of this action from:

A. Using the name or mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, the initials or mark RLDS, the seal or mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), the seal or mark PEACE (and design) or any other mark, name, or seal that is confusingly similar to Plaintiffs' REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) marks in signage, advertising, literature, and other church related materials;

B. Committing any other act calculated or likely to cause the public to believe that Defendants or their services are in any manner connected, licensed, sponsored, affiliated, or associated with Plaintiffs or from otherwise competing unfairly with Plaintiffs, including but not limited to, publicly identifying Defendants with organizations that use Plaintiffs' REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) marks or any other confusingly similar name, mark, or seal in an unauthorized manner.

**IT IS FURTHER ORDERED** that Defendants, including their agents, affiliates, employees, and all others acting in concert or participation with them, shall:

C. Within 10 days of the entry of this Order, change their sign to eliminate any use of the mark and name REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS;

D. Within 10 days of the entry of this Order, change the content of their website to eliminate any use of the mark and name REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS;

E. Cover or take down any seal, flag, or other display items on which the REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) marks or any confusingly similar marks appear;

F. Immediately notify in writing and direct all publishers and authors of advertisements and other literature in which the marks, names, or seals REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) or any confusingly similar marks currently appear or are scheduled to appear to cancel the publication and distribution of all such advertisements and other literature using the names, marks, or seals REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) or any confusingly similar marks; and

G. Within two weeks of the entry of this Order, file with the Court and serve upon Plaintiffs' counsel an affidavit or declaration attesting to and detailing Defendants' compliance with the Order;

**IT IS FURTHER ORDERED** that Plaintiffs shall post a bond in cash or corporate surety on this preliminary injunction in the amount of $1,000.00.

**SO ORDERED.**

s/ Gary A. Fenner<br>
Gary A. Fenner, Judge<br>
United States District Court

DATED: April 23, 2009

10

Case 4:08-cv-00906-GAF   Document 77   Filed 04/23/09   Page 10 of 10