# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| COMMUNITY OF CHRIST COPYRIGHT CORPORATION, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 08-00906-CV-W-GAF<br>) |
| DEVON PARK RESTORATION BRANCH OF JESUS CHRIST'S CHURCH, et al., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## ORDER

Presently before the Court is Plaintiffs Community of Christ Copyright Corporation ("Community of Christ CC") and Community of Christ a/k/a Reorganized Church of Jesus Christ of Latter Day Saints' ("Community of Christ") (collectively "Plaintiffs") Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56. (Doc. #101). Plaintiffs seek summary judgment on their infringement, false designation of origin, unfair competition, and dilution claims. *Id.* Plaintiffs further request the Court dismiss Defendants Devon Park Restoration Branch of Jesus Christ's Church and David McLean's (collectively "Defendants") counterclaims for cancellation on summary judgment. *Id.* Lastly, Plaintiffs request the Court permanently enjoin Defendants from using the names and marks associated with the present action. *Id.* Defendants oppose. (Doc. #107). For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is **GRANTED**.

## DISCUSSION

I.     FACTS

Community of Christ CC owns all right, title, and interest in and to federal Collective Membership Mark Registration No. 956,687 for RLDS (Doc. #102-2), federal Service Mark Registration No. 3,188,759 for REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS (Doc. #102-1), federal Service Mark Registration No. 3,173,265 for REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1) (Doc. #102-3), federal Service Mark Registration No. 1,044,453 for PEACE (and design) (Doc. #102-4) (collectively "Registered Marks"), and all corresponding common law rights in the marks. Community of Christ CC also owns all right, title, and interest in the unregistered mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 2) (Doc. #77, p. 2). The design marks are displayed below:



Reg. No. 3,173,265            Reg. No. 1,044,453            Unregistered Mark

The mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS has been in continuous use in the Midwest (and throughout the world) for more than 100 years, and the REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and

design versions 1 and 2) seals have been used in slightly variant forms since 1965. (Doc. ##77, p. 6; 102, p. 4; 107, p. 16). Community of Christ CC licenses the exclusive right to use all of the aforementioned marks to Community of Christ. (Transcript of Proceedings on April 15, 2009, and April 16, 2009, Vol. I ("Tr. I") at 38:2-39:7). In the past, Plaintiffs have taken measures to enforce their trademark rights, including the filing of an action before this Court to enforce their right to exclusive use of Service Mark Registration Nos. 3,188,759 and 956,687. (Tr. I, 74:19-75:6; Transcript of Proceedings on April 15, 2009, and April 16, 2009, Vol. II ("Tr. II"), 441:25-442:8; *Cmty. of Christ Copyright Corp. v. Miller*, No. 07-0543-CV-W-GAF, 2007 WL 4333192 (W.D. Mo. Dec. 7, 2007)).

In April of 2000, the Reorganized Church of Jesus Christ adopted the additional and concise name of Community of Christ. (Tr. I, 69:11-70:21). Since that time, Community of Christ has continued to use the name Reorganized Church of Jesus Christ of Latter Day Saints and the other marks-in-suit to hold title to property, to identify church buildings where their services are offered, and in authorized religious publications. (Tr. I, 71:4-72:8; 37:13-38:1).

Defendant Devon Park Restoration Branch of Jesus Christ's Church ("Devon Park") is a Missouri non-profit corporation having a place of worship at 824 Devon Street, Independence, Missouri. (Complaint, ¶ 3). Defendant David McLean is an individual who performs or performed ministerial acts in Missouri as the agent of Devon Park during times relevant to this action. *Id.* at ¶ 4. Defendants teach a set of religious beliefs that differ from Plaintiffs' beliefs. (Tr. II, 233:16-24).

3

In August of 2006, Plaintiffs heard that Defendants were using the name Reorganized Church of Jesus Christ of Latter Day Saints on their sign.¹ (Doc. #77, p. 2). In November of 2007, Plaintiffs were shown a photograph of Defendants' sign during the discovery phase of the *Miller* litigation. *Id.* On October 16, 2008, Plaintiffs received a letter from Defendants stating Defendants were using and intended to continue using Plaintiffs' marks on signage, literature, church bulletins, and advertisements. *Id.* Defendants have stated that at least part of the reason why they sent this letter was because they were aware of this Court's Order in the *Miller* case enjoining the defendants in that case to cease using the marks-in-suit. (Tr. I, 19:18-21, 20:5-21:18; Tr. II, 248:20-22, 247:24-248:1).

Plaintiffs responded by sending a letter to Defendants requesting that they cease and desist using Plaintiffs' marks. *Id.* at 3. Defendants never responded to this letter and have admitted they chose not to respond because they had no intention to stop using the marks. (Doc. #107, p. 25; Tr. II, 249:5-7). As a result, Plaintiffs filed suit against Defendants for, among other things, trademark violations under 15 U.S.C. § 1114 and 15 U.S.C. § 1125. (*See generally* Complaint). Subsequently, Plaintiffs discovered that Defendants have also used Plaintiffs' marks on a bronze seal mounted in their church sanctuary, on a flag hanging in their church sanctuary, in various business meeting minutes, newsletters, and social event flyers, on their website, in periodic ads placed with the Independence Examiner, and on baptismal, priesthood, and baby blessing certificates. (Doc. #77, p. 3; Responses to Plaintiffs' First Interrogatories to Devon Park, Response to Interrogatory No. 5).

---

¹Defendants admit that they wished to use the full name, Reorganized Church of Jesus Christ of Latter Day Saints, "so people would not think they had started a new church." (Doc. #107, p. 22).

Defendants did not ask for or obtain authorization from Plaintiffs to use the names, seals, or marks in any manner. (Doc. ##77, p. 3, 107, p. 24; Tr. II 247:9-17; 441:24-442:8).[2]

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." The movant has the initial burden to make this showing, but, if this burden is met, the nonmovant must designate "specific facts showing that there is a genuine issue for trial" to defeat summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (quoting Fed. R. Civ. P. 56(e)). In a trademark infringement case, summary judgment is appropriate when "a trade mark dispute centers on the proper interpretation to be given to the facts, rather than on the facts themselves." *Davis v. Walt Disney Co.*, 430 F.3d 901, 905 (8th Cir. 2005).

## III. ANALYSIS

### A. The Lanham Act

Under 15 U.S.C § 1114 (2009), any person or organization who, without the consent of the registrant:

> (a) use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels,

---

[2] Defendants attempt to assert facts based on their religious tenets and beliefs in support of their positions. However, the Free Exercise and the Establishment Clauses of the First Amendment prevent the Court from entertaining such facts and compel the Court to "pursue a course of 'neutrality' toward religion." *Bd. of Educ. of Kiryal Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 696 (1994) (citation and quotations omitted).

5

> signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant.

Under 15 U.S.C. § 1125(a)(1), a person or organization shall be civilly liable for engaging in unfair competition if:

> in connection with any goods or services, or any container for goods, [the person or organization] uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

In this case, Plaintiffs allege Defendants are liable under both § 1114 and § 1125(a)(1). Given the facts of the case, the elements of Plaintiffs' two claims under these sections are substantially the same. *See Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F. Supp. 990, 997 (W.D. Mo. 1986). Accordingly, Plaintiffs must demonstrate that: (1) they own or have rights in a protectable trademark or tradename; and (2) Defendants have used, in commerce, "a similar mark that is likely to cause confusion as the source of [Defendants'] goods or the involvement or association" of Plaintiffs with Defendants' business or activities. *Id*; *see also D C Comics, Inc. v. Powers*, 465 F. Supp. 843, 846 (D.C.N.Y. 1978).

In this case, there is no dispute Plaintiffs own or are exclusively licensed to use the marks-in-suit. Additionally, under 15 U.S.C. § 1065 (2009), the RLDS and Peace (and design) marks have become incontestable by virtue of being in continuous use by Plaintiffs for over five years post-registration. While the remaining marks have not become incontestable under § 1065, Plaintiffs have used these marks for decades throughout the United States to designate their services. (Doc.

#77, 5-6). Further, the marks-in-suit are not generic. *See Miller*, at *2. A mark is "generic" "when it has become the name of a product (e.g., 'sandwich' for meat between slices of bread) or class of products (thus 'church' is generic)." *Te-Ta-Ma Truth Found. – Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 666 (7th Cir. 2002). Plaintiffs' marks, however, are not generic marks representative or synonymous with religion or church in general; rather they distinguish Plaintiffs' unique and individual religious denomination and beliefs from others.[3] *See Id* (listing "Church of Jesus Christ of Latter Day Saints" as a non-generic mark). Lastly, Plaintiffs have not abandoned the marks-in-suit.[4] This fact is evident from Plaintiffs' continued use of the marks to hold title to property, to identify church buildings where their services are offered, and in authorized religious publications.

The Eighth Circuit has consistently used the following six factors, sometimes referred to as the "*SquirtCo* factors," to evaluate the likelihood of confusion in trademark cases:

(1) the strength of the owner's mark;

(2) the similarity of the owner's mark and the alleged infringer's mark;

(3) the degree to which the products compete with each other;

(4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner;

(5) incidents of actual confusion; and

(6) the type of product, its costs, and conditions of purchase.

*Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1053 (8th Cir. 2005); *see also SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). "No one factor controls, and because the

---

[3]See Section III(C)(ii) below for further discussion of this point.

[4]This issue is discussed further in Section III(C)(i) below.

inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Kemp*, 398 F.3d at 1054. Each factor, as it relates to this case, is discussed below.

      **i.**      **The Strength of the Marks-in-Suit**

"Generally, the strength of a mark depends on two factors - the distinctiveness of the mark and the extent to which the mark is recognized by the relevant customer class." *Aveda Corp. v. Evita Mktg, Inc.*, 706 F. Supp. 1419, 1428 (D. Minn. 1989) (citation omitted). Registration of a mark "creates a rebuttable presumption that the mark is valid," and, therefore, registered marks are "presumed to be distinctive and nonfunctional." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994). Finally, evidence of intentional copying demonstrates a mark has gained a strong secondary meaning. *Ford Motor Co. v. Lloyd Design Corp.*, 184 F. Supp. 2d 665, 670 (E.D. Mich. 2002); *see also Esercizio v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991) ("The evidence of intentional copying shows the strong secondary meaning of [a plaintiff's trademarks] because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.") (citations and quotations omitted).

In this case, Plaintiffs' marks-in-suit are very strong. Defendants have offered no evidence to the contrary and have not rebutted the presumption that Plaintiffs' registered marks are distinctive. Additionally, Defendants do not deny that they have intentionally copied Plaintiffs' precise marks and continue to use them. This demonstrates that the copied marks have gained strong secondary meaning. In fact, regarding Defendants' use of Plaintiffs' federal Service Mark Registration No. 3,188,759 for REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, Defendants admit they used the mark so that people would not think they had formed a new church.

Given the facts, there is no genuine dispute that the marks-in-suit are very strong and/or have developed a strong secondary meaning. This factor weighs heavily in favor of finding a high likelihood of confusion.

### ii. Similarity of the Marks

Defendants do not address this factor and do not deny using marks identical or substantially similar to Plaintiffs' marks. Further, Defendants admit that they used Plaintiffs' marks geographically near Plaintiffs' world headquarters and various Community of Christ congregations in and around the Independence, Missouri, area. (Doc. #107, p. 23). Numerous courts have concluded that "when identical marks are used in the same geographic area for the same class of goods or services, likelihood of confusion is presumed." *Solutech, Inc. v. Solutech Consulting Servs.*, 153 F. Supp. 2d 1082, 1088 (E.D. Mo. 2000); *see also Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3rd Cir. 1990); *Crown Indust. Prods. Co. v. Crown Cent. Petroleum Corp.*, 440 F.2d 446, 448 (C.C.P.A. 1971). Thus, at a minimum, this factor weighs heavily in favor of finding a high likelihood of confusion.

### iii. Competition

Defendants assert that they "seek to avoid confusion, and to distinguish [their] religious services from those offered by [Plaintiffs]." (Doc. #107, p. 47). This statement is insufficient to create a genuine issue of fact as to whether Plaintiffs and Defendants compete for the same members or offer the same services. It is undisputed that both Plaintiffs and Defendants are in the business of offering ministerial services to the public in and around Independence, Missouri. Thus, they necessarily compete for patronage in that area. Defendants attempt to cut the issue too thinly. The parties do not dispute that they offer different services or espouse differing religious beliefs, but

those facts do not change the fact that both parties offer services falling within the same broad category (i.e., religious ministerial services). Therefore, no genuine issue exists as to whether the parties compete; they do compete, and this factor weighs in favor of finding a high likelihood of confusion.

### iv. Defendants' Intent to "Pass Off" Their Services as Plaintiffs'

It is undisputed that Defendants' knew Plaintiffs owned the rights to the marks-in-suit and intentionally copied them. "An inference of an intent to trade upon the plaintiff's good will arises if the defendants, with knowledge of plaintiff's mark, chose a mark similar to that mark from the infinite number of possible marks." *Aveda*, 706 F. Supp. at 1429. Again, Defendants argue that they do "not compete with [Plaintiffs] or try to 'pass off' [their] services as those of [Plaintiffs]." (Doc. #107, p. 48). In light of the facts, this general denial does not create any genuine issue of fact weighing on this factor. Defendants were aware Plaintiffs had protectable rights in the marks-in-suit, chose to use those marks anyway, sent Plaintiffs a letter evincing their intent to continue using Plaintiffs' marks, and have admitted that they used at least one of the marks-in-suit because they did not want potential members to believe they had started a new church. Defendants have offered no evidence sufficient to rebut an inference of their intent to trade upon Plaintiffs' good will. Rather, the evidence strongly suggests Defendants intended to do just that. Thus, no genuine issue exists regarding whether Defendants intended to "pass off" their services as Plaintiffs', and this factor weighs in favor of finding a high likelihood of confusion.

### v. Incidents of Actual Confusion

Neither party has submitted evidence of actual confusion. This, however, does not create a genuine issue of fact because a "plaintiff is not required to prove any instances of actual

10

confusion." *Aveda*, 706 F. Supp. at 1430. The test for infringement is not actual confusion, but rather merely the likelihood of confusion. *Id*. For these reasons, the lack of evidence of actual confusion does not create a factual issue for trial, and this factor is neutral.

      **vi.**      **The Type of Product, Its Cost, and Conditions of Purchase**

"In a trademark infringement action[,] the kind of product, its cost and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *SquirtCo*, 628 F.2d at 1091. Here, the terms "product," "cost," and "conditions of purchase" are somewhat inappropriate. There has been no evidence that the parties charge specific rates for their services or that such services are rendered only upon certain conditions. However, both Plaintiffs and Defendants do offer the same general "product" (i.e., ministerial services). Hence, the only question is whether the degree of care exercised by a person seeking ministerial services can eliminate the likelihood of confusion that otherwise exists.

Defendants state, "a consumer seeking a new religious home is expected to exercise a good deal of care in choosing the set of beliefs he or she will adopt, making it unlikely that confusion will result." This lone, unsupported statement represents Defendants' only argument that this factor weighs in their favor. Even assuming this statement is true, exercising "a good deal of care in choosing the set of beliefs" one will adopt does not eliminate the likelihood of confusion that would otherwise exist in this case. This is because here, Defendants have chosen to use marks identical to or nearly identical to Plaintiffs' marks. *See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.* 652 F. Supp. 1105, 1113 (S.D.N.Y. 1987), *aff'd*, 830 F.2d 1217 (2d Cir. 1987) ([E]ven a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when

confusion." *Aveda*, 706 F. Supp. at 1430. The test for infringement is not actual confusion, but rather merely the likelihood of confusion. *Id*. For these reasons, the lack of evidence of actual confusion does not create a factual issue for trial, and this factor is neutral.

      **vi.**      **The Type of Product, Its Cost, and Conditions of Purchase**

"In a trademark infringement action[,] the kind of product, its cost and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *SquirtCo*, 628 F.2d at 1091. Here, the terms "product," "cost," and "conditions of purchase" are somewhat inappropriate. There has been no evidence that the parties charge specific rates for their services or that such services are rendered only upon certain conditions. However, both Plaintiffs and Defendants do offer the same general "product" (i.e., ministerial services). Hence, the only question is whether the degree of care exercised by a person seeking ministerial services can eliminate the likelihood of confusion that otherwise exists.

Defendants state, "a consumer seeking a new religious home is expected to exercise a good deal of care in choosing the set of beliefs he or she will adopt, making it unlikely that confusion will result." This lone, unsupported statement represents Defendants' only argument that this factor weighs in their favor. Even assuming this statement is true, exercising "a good deal of care in choosing the set of beliefs" one will adopt does not eliminate the likelihood of confusion that would otherwise exist in this case. This is because here, Defendants have chosen to use marks identical to or nearly identical to Plaintiffs' marks. *See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.* 652 F. Supp. 1105, 1113 (S.D.N.Y. 1987), *aff'd*, 830 F.2d 1217 (2d Cir. 1987) ([E]ven a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when

confusion." *Aveda*, 706 F. Supp. at 1430. The test for infringement is not actual confusion, but rather merely the likelihood of confusion. *Id*. For these reasons, the lack of evidence of actual confusion does not create a factual issue for trial, and this factor is neutral.

      **vi.**      **The Type of Product, Its Cost, and Conditions of Purchase**

"In a trademark infringement action[,] the kind of product, its cost and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *SquirtCo*, 628 F.2d at 1091. Here, the terms "product," "cost," and "conditions of purchase" are somewhat inappropriate. There has been no evidence that the parties charge specific rates for their services or that such services are rendered only upon certain conditions. However, both Plaintiffs and Defendants do offer the same general "product" (i.e., ministerial services). Hence, the only question is whether the degree of care exercised by a person seeking ministerial services can eliminate the likelihood of confusion that otherwise exists.

Defendants state, "a consumer seeking a new religious home is expected to exercise a good deal of care in choosing the set of beliefs he or she will adopt, making it unlikely that confusion will result." This lone, unsupported statement represents Defendants' only argument that this factor weighs in their favor. Even assuming this statement is true, exercising "a good deal of care in choosing the set of beliefs" one will adopt does not eliminate the likelihood of confusion that would otherwise exist in this case. This is because here, Defendants have chosen to use marks identical to or nearly identical to Plaintiffs' marks. *See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.* 652 F. Supp. 1105, 1113 (S.D.N.Y. 1987), *aff'd*, 830 F.2d 1217 (2d Cir. 1987) ([E]ven a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when

the marks and products are nearly identical."). For example, even highly sophisticated persons viewing Defendants' sign, which includes Plaintiffs' REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS mark, could easily become confused about the relationship or affiliation between Defendants and Plaintiffs. Defendants' "good deal of care" argument is insufficient to create a genuine issue of fact, and this factor weighs in favor of finding a high likelihood of confusion.

Viewing the six *SquirtCo* factors as they applied above, five of the factors weigh heavily in favor of finding a high likelihood of confusion, while the remaining factor remains neutral. Further, given the facts in this case, no factor creates a genuine issue of fact for trial. Therefore, based on the above, the Court finds the facts of this case establish a likelihood of confusion as a matter of law. Plaintiffs have protectable rights in the marks-in-suit, Defendants have used the marks-in-suit without Plaintiffs' permission, and such use creates a likelihood of confusion. Thus, Plaintiffs' Motion for Summary Judgment on their federal claims for trademark infringement and false designation/unfair trade practices under the Lanham Act is **GRANTED**.

**B.     Common and Missouri State Law**

    **i.     Common Law Infringement and Unfair Competition**

The same facts that support a suit for federal trademark infringement support a suit for unfair competition and common law infringement under Missouri law. *See Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 758 F. Supp. 512, 522-27 (E.D. Mo. 1991). This is true whether a plaintiff has actually registered its trademark with the patent office. *Id* (noting ownership of a trademark is acquired not by registration, but by use and that unfair competition protects "a trademark, registered or not"). Therefore, Plaintiffs have protectable common law rights in both

12

their Registered Marks and their unregistered mark, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 2). For the same reasons as those set forth above in Section I(A), Defendants' use of Plaintiffs' marks without Plaintiffs' authorization creates a likelihood of confusion as to the source of Defendants' ministerial services or Plaintiffs' affiliation with or approval of Defendants' services. *See Gilbert/Robinson, Inc.*, 758 F. Supp. at 527. Therefore, Plaintiffs' Motion for Summary Judgment on the issues of common law infringement and unfair competition is **GRANTED**.

### ii. Likelihood of Dilution Under Missouri State Law

Under Missouri's anti-dilution statute, Mo. Rev. St. § 417.061 (2009), "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark . . . valid at common law . . . shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." To prevail under the anti-dilution statute, a "plaintiff must show its mark or trademark was valid at common law, that its mark is distinctive, and that defendants' use of its name created a likelihood of dilution of the distinctive quality of plaintiff's mark." *Gilbert/Rob*inson*, Ind.*, 758 F. Supp. at 527; *see also Hallmark Cards*, 634 F. Supp. at 1000.

As set forth above, Plaintiffs' marks are distinctive and valid at common law. Defendants' continued use of the marks-in-suit will adversely affect the distinctiveness of those marks, thereby causing members of the public to have difficulty distinguishing Defendants' services from Plaintiffs' services. No evidence has been submitted in this case that would suggest a different result or create a genuine issue of fact on the matter for trial. Thus, Plaintiffs' Motion for Summary Judgment on the issue of dilution under Missouri law is **GRANTED**.

## C. DEFENDANTS' CANCELLATION CLAIMS

### i. Abandonment

Defendants claim Plaintiffs' rights to the marks-in-suit should be canceled because Plaintiffs' have abandoned their use. A mark is deemed "abandoned" if either: (1) "its use has been discontinued with intent not to resume such use"; or (2) "any course of conduct of the owner . . . causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." Defendants' have the burden of proving abandonment by clear and convincing evidence. *See* 3 J. McCarthy, *Trademarks and Unfair Competition* § 17:12 (4th ed. 2008).

As previously discussed above, Plaintiffs have not discontinued the use of the marks-in-suit. Community of Christ continues to use the name Reorganized Church of Jesus Christ of Latter Day Saints and the other marks-in-suit on the exterior and interior of the buildings of many of their authorized congregations, in publications, to hold title to real estate, in the receipt of gifts and bequests, and as identifiers by Community of Christ's members. Such use is bona fide service mark and collective membership mark use and is not mere warehousing of the marks. *See* Doc. #77, p. 10. Defendants cite *IntraWest Fin. Corp. v. W. Nat'l Bank of Denver*, 610 F. Supp. 950 (D. Colo. 1985), to support their position; but this case differs from *IntraWest* in that Plaintiffs continued to use the marks-in-suit as service source and membership identifiers and apprized the public of their intent to continue to use their marks despite adopting the additional denomination name Community of Christ. Plaintiffs' continued use of the marks-in-suit as trademarks, service marks, and collective membership marks forecloses a finding of abandonment. Thus, no genuine issue of fact on this issue

14

is present, and, therefore, Plaintiffs' Motion for Summary Judgment on Defendants' claims for cancellation due to abandonment is **GRANTED**.

      **ii.**      **Whether the Marks-in-suit are Generic**

As stated in Section III(A) above, Plaintiffs' marks are not generic, and Plaintiffs' rights in them may not be canceled on such grounds. Accordingly, no genuine issue of fact exists for trial on this issue, and Plaintiffs' Motion for Summary Judgment on the issue is **GRANTED**.

**D.**    **PERMANENT INJUNCTION**

Plaintiffs request the Court make its injunction against Defendants permanent. Based on the undisputed facts and the determinations set forth above, Plaintiffs are entitled to a permanent injunction enjoining Defendants from using the marks-in-suit or committing any other act calculated or likely to cause the public to believe Defendants' services are in any way related to Plaintiffs.

The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that the movant must attain success on the merits. *McCann v. Barton*, No. 08-00574-CV-W-GAF, 2009 WL 900741, at *22 (W.D. Mo. April 1, 2009); *Bank One v. Guttau*, 190 F.3d 847, 844 (8th Cir. 1999). Thus, to obtain a permanent injunction, a plaintiff must show: (1) actual success on the merits; (2) it faces irreparable harm; (3) the harm to it outweighs any possible harm to others; and (4) an injunction serves the public interest.[5] *Id.*

In this case, as demonstrated above, it has been determined that Plaintiffs are entitled to summary judgment on their federal trademark claims for infringement and false designation and

---

[5]Under Mo. Rev. St. § 417.061 (2009), an injunction prohibiting the use of Plaintiffs' common law marks is proper on lesser grounds, requiring only a finding of likelihood of injury "to business reputation or of dilution." As demonstrated in Section III(B) above, this requirement has been met.

their Missouri law claims for common law infringement, unfair competition, and dilution. Hence, Plaintiffs have established actual success on the merits.

Plaintiffs have also demonstrated potential irreparable harm from Defendants' use of the marks-in-suit. "In trademark infringement, it is not necessary for plaintiff to prove actual damage or injury to obtain injunctive relief. Injury is presumed once a likelihood of confusion has been established." *Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 403 n.11 (8th Cir. 1987) (quotations omitted); *see also* Lanham Act, 15, U.S.C. § 1116(a) (authorizing injunctive relief for trademark violations). Since a likelihood of confusion has been established, injury is presumed, and no evidence has been presented to rebut this presumption.

In addition, the harm to Plaintiff of allowing Defendants to continue using the marks-in-suit would greatly outweigh any possible harm to others. The requested injunction will not interfere with Defendants' worship services or religious beliefs or practices. Numerous other Restoration Branches operate without using Plaintiffs' marks, and Defendants have offered no reason why they cannot do the same. Defendants have a non-infringing name they may use to identify their services and membership (i.e., their current official name of incorporation, "Devon Park Restoration Branch of Jesus Christ's Church"). Plaintiffs are entitled to the exclusive use of their marks, and an injunction will protect Plaintiffs' interest with minimal harm to Defendants or any one else.

Finally, in this case, an injunction would serve the public interest. The public has an interest in the enforcement of valid trademarks. The public also has the right not to be deceived or confused as a result of the infringement of established marks. *See Opticians Ass'n of Am.*, 920 F.2d at 197.

### E. ATTORNEY FEES

In "exceptional cases," the Lanham Act, 15 U.S.C. § 1117(a), allows a court, in its discretion, to award reasonable attorney fees to a party who succeeds on a trademark claim. "When a defendant intentionally and wilfully infringes the trademark of another[,] such an exceptional case exists." *Hallmark Cards*, 634 F. Supp. at 1001; *see also Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 716 (8th Cir. 1980).

In this case, Defendants intentionally and wilfully infringed Plaintiffs' trademarks. Defendants sent a letter to Plaintiffs stating that they were using Plaintiffs' trademarks and that they had no intent to discontinue their use. Defendants also admit that they were aware of Plaintiffs' actions to enforce their trademark rights against others. Further, Defendants admit that at least one reason they wished to use Plaintiffs' marks was to avoid having potential members believe Defendants had started a new church. Lastly, Defendants continued using Plaintiffs' trademarks despite knowing they did not have Plaintiffs' permission to do so and despite receiving Plaintiffs' letter requesting that they cease and desist from using the marks-in-suit. Because Defendants intentionally and wilfully infringed the marks-in-suit, this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a).

The Court finds that Defendants are liable to Plaintiffs for Plaintiffs' reasonable attorney fees in this exceptional case. The amount of such fees shall be determined by the Court upon submission of the necessary evidence and a hearing.

### CONCLUSION

In conclusion, Plaintiffs' Motion for Summary Judgment is **GRANTED**, and Plaintiffs are entitled to summary judgment on: (1) their claims for federal trademark infringement and false

designation/unfair competition under the Lanham Act; (2) their claims for common law infringement and unfair competition under Missouri law; (3) Defendants' cancellation claims; (5) their request for a permanent injunction; and (6) their request for reasonable attorney fees.

With respect to the permanent injunction, for the reasons set forth in Section III(D) above, it is

**ORDERED** that Defendants, including their agents, affiliates, employees, and all others acting in concert or participation with them are **ENJOINED AND RESTRAINED** permanently from:

    A.    Using the name or mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, the initials or mark RLDS, the seal or mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), the seal or mark PEACE (and design) or any other mark, name, or seal that is confusingly similar to Plaintiffs' REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS (and design version 1 or 2), and PEACE (and design) marks in signage, advertising, literature, or other church related materials; and

    B.    Committing any other act calculated or likely to cause the public to believe that Defendants or their services are, in any manner, connected, licensed, sponsored, affiliated, or associated with Plaintiffs or from otherwise competing unfairly with Plaintiffs, including but not limited to, publicly identifying Defendants with organizations that use Plaintiffs' REORGANIZED CHURCH OF JESUS CHRIST

OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) marks or any other confusingly similar name, mark, or seal in an unauthorized manner.

**IT IS FURTHER ORDERED** that Defendants, including their agents, affiliates, employees, and all other acting in concert or participation with them, if they have not already done so, shall:

C. Within 10 days of the entry of this Order, permanently change their sign to eliminate any use of the mark and name REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS;

D. Within 10 days of the entry of this Order, permanently change the content of their website to eliminate any use of the mark and name REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS;

E. Permanently remove or take down any seal, flag, or other display items on which the REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) marks or any confusingly similar marks appear;

F. Immediately notify, in writing, and direct all publishers and authors of advertisements and other literature in which the marks, names, or seals REORGANIZED CHURCH OF JESUS CHRIST OR LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) or any

confusingly similar marks currently appear, or are scheduled to appear, to cancel the publication and distribution of all such advertisements and other literature using the names, marks, or seals REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, RLDS, REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1 or 2), and PEACE (and design) or any confusingly similar marks; and

G. Within two weeks of the entry of this Order, file with the Court and serve upon Plaintiffs' counsel an affidavit or declaration attesting to and detailing Defendants' compliance with this Order.

**IT IS SO ORDERED.**

                                                   s/ Gary A. Fenner
                                                   Gary A. Fenner, Judge
                                                   United States District Court

DATED: **January 14, 2010**